# Exhibit A

1  GIBSON, DUNN & CRUTCHER LLP
   JOSHUA S. LIPSHUTZ, SBN 242557
2    jlipshutz@gibsondunn.com
   555 Mission Street, Suite 3000
3  San Francisco, CA 94105-0921
   Telephone:   415.393.8200
4  Facsimile:   415.393.8306

5  JAMES FOGELMAN, SBN 161584
     jfogelman@gibsondunn.com
6  THEANE EVANGELIS, SBN 243570
     tevangelis@gibsondunn.com
7  MICHAEL HOLECEK, SBN 281034
     mholecek@gibsondunn.com
8  333 South Grand Avenue
   Los Angeles, CA 90071-3197
9  Telephone:   213.229.7000
   Facsimile:   213.229.7520
10
   Attorneys for Defendant DOORDASH, INC.
11

12                  UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                    SAN FRANCISCO DIVISION

15
                                    CASE NOS. 3:19-cv-07545-WHA
16                                            3:19-cv-07646-WHA
   TERRELL ABERNATHY, et al.,
17                                  DECLARATION OF RICHARD ZITRIN IN
                    Petitioners,    SUPPORT OF DOORDASH, INC.'S
18                                  OPPOSITION TO PETITIONERS'
        v.                          AMENDED MOTION TO COMPEL
19                                  ARBITRATION
   DOORDASH, INC.,
20                                  Action Filed:  November 15, 2019
                    Respondent.
21
                                    Hearing Date: February 10, 2020
22                                  Hearing Time: 2:00 p.m.
                                    Hearing Place: Courtroom 12 – 19th Floor
23                                  Honorable William Alsup

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

---

DECLARATION OF RICHARD ZITRIN                3:19-CV-07545-WHA & 3:19-CV-07646-WHA

I, Richard Zitrin, hereby declare as follows:

1.      I am an attorney licensed to practice before all the courts of the states of California and New York and United States District Courts and Circuit Courts in those states.  I am a professor of legal ethics at the University of California, Hastings College of the Law, with the current title of Lecturer Emeritus, and am the lead author of three books on legal ethics. I am certified by the Board of Legal Specialization of the State Bar of California as a specialist in "Legal Malpractice Law," which includes the sub-specialty of legal ethics advice and opinions.   I am serving in this matter in the capacity of an expert in legal ethics, having been retained by the law firm of Gibson Dunn, which represents the defendant DoorDash in the within matter.  If requested to by this Court, I am prepared to testify as to all matters contained in this Declaration.

2.      I previously provided to this Court both my curriculum vitae and my article on so-called "mass action" cases, *Regulating the Behavior of Lawyers in Mass Individual Representations: A Call for Reform*, 3 St. Mary's J. on Legal Malpractice & Ethics 86 (2013), in exhibits attached to my declaration herein signed on November 21, 2019.  *See* Dkt. 35-1.

3.      In paragraph 3 of that prior declaration, I described some specifics regarding my background and experience. In paragraphs 4 through 16 of that declaration, I described my specific background and experience in the area of "mass actions," and, generally, my understanding of the law of lawyering with respect to mass actions.

4.      In addition to the documents I read prior to my November 21 declaration, I have read or closely reviewed each of the following documents:

- Plaintiff's Amended motion to compel arbitration (Dkt. 151);
- Marquel Reddish's Declaration in support of that motion (Dkt. 153);
- Ashley Keller's Declaration in support of that motion (Dkt. 152);
- Exhibits A through S, W, X, Y, II, JJ, and KK of the Keller Declaration;
- Terrell Abernathy's declaration in support of arbitration, provided by counsel at Gibson Dunn as a sample of such declarations (Dkt. 153-6 at 2);
- Aaliyah Ellis's "witness statement," provided by counsel at Gibson Dunn as a sample of such statements (Dkt. 153-8 at 2);

- DocuSign certificate of completion with Aaron Lee as the stated signatory, provided by counsel at Gibson Dunn as a sample of such certificates;

- Joshua Lipshutz's Declaration in Opposition to Keller Lenkner's Motion for a Temporary Restraining Order, signed November 22, 2019, and Exhibits A through L to that declaration, including Exhibit A, a March 20, 2019 letter from Ashley Keller to Keith Yandell of DoorDash (Dkt. 35-5);

- The on-line docket in this matter;

- Engagement agreement between plaintiffs and Keller Lenkner and Troxel Law, LLP filed in the multi-district litigation known as *In re CenturyLink Sales Practices and Sec. Litig.*, No. 17-md-2795-MJD-KMM, Dkt. 512-5 (D. Minn. Jan. 10, 2020) (attached hereto as **Exhibit A**);

- Declaration of Prof. Nancy J. Moore signed January 10, 2020, in *In re CenturyLink Sales Practices and Sec. Litig.*, No. 17-md-2795-MJD-KMM, Dkt. 510 (D. Minn. Jan. 10, 2020);

- Declaration of Andrew Unthank signed January 10, 2020, in *In re CenturyLink Sales Practices and Sec. Litig.*, No. 17-md-2795-MJD-KMM, Dkt. 512 (D. Minn. Jan. 10, 2020).

5.     I have been advised by counsel at Gibson Dunn, and have assumed the veracity of that advice for purposes of this declaration, of the following: (1) DoorDash, through counsel, advised Keller Lenkner that several hundred individuals on whose behalf Keller Lenkner had asserted claims were either persons unknown to DoorDash, or persons who began a DoorDash application process but never completed it; or persons who, despite completing the application process, never undertook a delivery; (2) In its most recent arbitration petition, Keller Lenkner did not seek arbitration for approximately 361 persons previously on their arbitration lists; and (3) DoorDash counsel has found a substantial number of names on Keller Lenkner's arbitration petition list who are purportedly represented by other counsel on the same issues in other cases against DoorDash.

6.     Counsel for DoorDash has asked for my opinion on three issues, as follows:

- What specifically would be required in order for a law firm to ethically represent thousands of plaintiffs in a mass action such as the within case?

Gibson, Dunn & Crutcher LLP

DECLARATION OF RICHARD ZITRIN                                    3:19-CV-07545-WHA & 3:19-CV-07646-WHA

- Aside from Keller Lenkner's assertions of representation, does it otherwise appear based on the information available that Keller Lenkner represents all the persons they purport to represent?

- Does it appear from the information available to me that, assuming Keller Lenkner has an agreement to be engaged as counsel for all persons for whom they are asserting arbitration claims, that representation meets California and American Bar Association ethical standards?

7. It is my opinion, and unequivocally clear under all ethics rules known to me, that when a law firm undertakes to represent *individual clients* on individual claims, those clients – unlike, for example, passive class members in a class action – are entitled to the entire, 100%, unabrogated loyalty of their lawyers as to each and every individual. Because each individual's claim is only one of a large number, plaintiff's counsel in such instances must, at the least, assiduously follow a strict and complex path in order to ensure that the full panoply of all of counsel's fiduciary duties to their clients is protected, subject only to a knowing and intelligent waiver of certain conflicts of interest upon those conflicting loyalties being fully and adequately disclosed and explained.

8. OPINION 1: WHAT IS REQUIRED FOR ETHICAL MASS-ACTION REPRESENTATION? It is my opinion that the issues in the following paragraphs must be addressed in order for plaintiffs' counsel to ethically represent plaintiffs in "mass action" cases:

9. <u>Right to resolve case</u>: Under the ethics rules of all American jurisdictions, and specifically in the State of California, lawyers who represent multiple clients in cases based on the same claim and/or theory of recovery must do so while respecting the requirement that *each individual client* holds the right to settle or resolve his/her/their case, through settlement or otherwise, and *that right cannot be waived* or delegated to the client's attorneys.

10. <u>No aggregate settlements</u>: Under the ethics rules of all American jurisdictions, and specifically in the State of California, lawyers who represent multiple clients in cases based on the same claim and/or theory of recovery must do so while respecting the requirement that no lawyer or law firm may accept an aggregate settlement on behalf of more than one client without the *individual* approval of *each individual client* to the settlement amount he/she/they will specifically receive. *This right is also unwaivable*, that is, the right to settle or resolve his/her/their case may not be waived or

DECLARATION OF RICHARD ZITRIN                3:19-CV-07545-WHA & 3:19-CV-07646-WHA

given to the client's attorneys. There is thus an almost-irreconcilable dichotomy that lawyers face when respecting the necessity of individual consent to resolution on one hand, and avoiding an aggregate settlement on the other.

11.     <u>Attorney-client engagement agreements – client autonomy</u>: Engagement agreements must make clear both that individual clients have the right to determine the fate of their own individual cases, and that the lawyers will not accept a lump-sum or aggregate settlement that includes the client's case without specific consent from the client as to the amount of that individual client's recovery. Because of the clear requirements of the ethical rules, engagement agreements <u>*may not*</u> set up a methodology to resolve the difficulties in abiding by both these ethical requirements if they abrogate either requirement. Such unacceptable methodologies might include clients' ostensible consent to: agreeing pre-emptively or presumptively to a settlement amount; giving authority to settle to the attorney or to some "independent" third party; using a super-majority to decide whether to settle; and authorizing a client steering committee to agree on settlement.

12.     <u>Attorney-client engagement agreements – conflicts of interest</u>:  Conflicts of interest are an inevitable part of mass action cases, and engagement agreements must fully address both the foreseeable conflicts that could materially affect representation and whether and how they may be waived. Among the foreseeable conflicts are:

- the relative strengths of proof supporting individual clients' claims;
- the relative amounts of clients' claims;
- the relative applicability of statute of limitations and other procedural bars to recovery of certain clients' claims;
- the fact that a defendant may have a limited fund, or "pot," from which to pay settlements or judgments;
- the reasonable possibility that some clients may face liens, cross-complaints or other claims that would diminish those clients' gross recoveries;
- in certain cases, the likelihood that some clients will have claims against other clients;
- the possibility – even likelihood – that a defendant will offer one lump-sum amount to resolve all or some large number of plaintiffs' cases, which would then have to be divided among a

large number of individual clients, many of whom may have differing proofs, procedural obstacles, and/or amounts;

- the likelihood that as a matter of litigation efficiency, plaintiffs' counsel will engage in a proposed global resolution of claims, which may be seen as imperative with a high volume of individual clients, but is extremely unlikely to result in the lawyers' case-by-case treatment of each client's claim;

- the likelihood that, should a settlement be offered to all or a large number of clients, it may be conditioned on acceptance by all or a substantial number (e.g., 90%) of all clients, and that not all clients will be willing to settle;

- this last issue will necessarily put even the most honorable of counsel – i.e., not those counsel who will recommend settlement as a way to achieve their own personal goals in the form of fees – in the position of advising _all_ of its clients, which is likely even in these best of circumstances to mean arguing _in favor_ of the settlement for those for whom they think the settlement is a good one, while arguing _against_ settlement for those for whom they think the settlement is a bad one;

- the fact that overlying these individual issues is the reality that if X% of the clients do not accept the settlement, the entire settlement would fail, to the detriment to those clients who would prefer to settle;

- the fact that if not all clients consent, those who do not continue to require their lawyers' full fiduciary duties in protecting their interests, including ongoing representation, which may be antithetical to the agreements sought by defendants.

13.      Attorney-client engagement agreements – loyalty and confidentiality: Conflict of interest waivers should almost always include waivers of confidential communications as among the lawyers and their group of clients. Agreements to waive confidential communications within the attorney-client group (and not as to any outside persons) avoids a situation in which the lawyers learn something from, or about, one client that that client does not want another client to know. Generally

speaking, it is far better to have an understanding that information, no matter what[1], will be shared. It sets forth a viable ground rule that makes expectations clear and does not put the lawyers in the unenviable position of either maintaining client confidentiality or remaining loyal to the person who would like to hear the information. This is even more true in mass actions, because it enables a measure of necessary transparency. Such transparency enables every client to know the circumstances, settlement demands, and settlement offers of other clients, including most significantly those similarly situated. The failure to waive confidentiality results in a tangled web of communications that if revealed abrogate duties to one client and if not revealed abrogate duties to another.

14. <u>Attorney-client engagement agreements – other necessary loyalty disclosures</u>: In order to be able to represent clients in a mass action case ethically, it is imperative not merely to reference the reasonably foreseeable impairments of loyalty that could materially limit representation, as noted above, but also to explain these conflicts in an intelligible way <u>*and*</u> explain how and to what extent the conflicts may be resolved in a way that protects each individual client. Thus, counsel must explain:

- that the rules about aggregate settlements and the right of the client to decide to settle will not be abrogated, and that counsel will not accept an aggregate settlement without authorization from each client as to a settlement amount;
- that in the event of an offer of an aggregate settlement, the client will have the opportunity to accept or reject a specific amount, <u>*and*</u> that by rejecting it will not lose representation if the supermajority demanded by the defendant accepts a settlement;
- that if the requisite supermajority is reached, the non-settling clients will continue to have ongoing and unfettered representation, and that if the original law firm is too enmeshed in promoting a settlement for other clients that conflicts with the goals of the remaining clients, another law firm familiar with the case will be able to step in as counsel.

---

[1] Perhaps not applicable here, but such waivers of confidentiality should exclude personal health and financial information.

DECLARATION OF RICHARD ZITRIN     3:19-CV-07545-WHA & 3:19-CV-07646-WHA

15.     <u>Attorney behavior in litigation</u>: During the course of the litigation, and even assuming full disclosure and informed client consent, the lawyers must act within the parameters of their duties to <u>*all*</u> clients subject only to knowing and intelligent consents made by each. This means, *inter alia*, that the lawyers must: avoid lump-sum settlement proposals that trade some clients' benefits for others; protect the interests of the minority of their clients as well as the majority; protect the minority clients without abandoning them or limiting their work on those clients' behalves; and maintain a high degree of transparency with all clients. Lawyers must internalize their understanding that loyalty in such cases have far less similarity to class actions than they do to the representation of two or three clients in an auto accident case.

16.     OPINION 2: IT DOES NOT APPEAR THAT KELLER LENKNER REPRESENTS ALL PERSONS THEY PURPORT TO REPRESENT. Among the reasons for this opinion are the following: In reviewing the docket in this matter, I have seen numerous filings by Keller Lenkner setting forth a different series of names of the clients they state they are representing, or who are included in petitions for arbitration. My understanding is that the most recent list of clients petitioning for arbitration removes approximately 361 persons who were on previous lists. My further understanding is that DoorDash's research has resulted in its determination that some persons on previous Keller Lenkner client lists were unknown to DoorDash, while others were persons who either began a DoorDash application process but never completed it, or who, despite completing the application process, never made a DoorDash delivery. My further understanding is that DoorDash or its counsel have discovered that a substantial number of plaintiffs Keller Lenkner claims as their clients of are identified in other similar matters as clients of other law firms.

17.     Another reason for my opinion is the following: In reading the Abernathy declaration in support of arbitration, the Ellis "witness statement," and the Lee DocuSign certificate of completion, I was struck by the absence of expected references to Keller Lenkner. The Abernathy declaration appears to be lawyer-generated, and states Abernathy's desire to opt out of the CPR "click-through" arbitration agreement. But while it refers to authorizing "my attorneys," it does not name them. The Ellis statement, which was DocuSigned, does state that the client "retained Keller Lenkner, LLC," although the header of the form references both Keller Lenkner and Troxel Law. The

Lee DocuSign certificate – provided to show authenticity of DocuSign signatures – is a document created by Jeremy Troxel that clearly references Troxel Law as the responsible counsel in numerous paragraphs on pages 2, 3, and 4, and closes with reference to the signer's "relationship with Troxel Law." I cannot conclude from these documents that Keller Lenkner actually formed an attorney-client relationship with all those who signed similar documents. It is far clearer that some kind of relationship was formed with Troxel Law.

18.     OPINION 3: FROM THE INFORMATION AVAILABLE TO ME, KELLER LENKNER'S REPRESENTATION OF CLIENTS IN THIS MATTER DOES NOT MEET CALIFORNIA OR ABA ETHICAL STANDARDS.  I have read and annotated the engagement agreement provided in the *CenturyLink* case referenced above and attached hereto as **Exhibit A**. I do not know whether this agreement is the same or substantially similar to the engagement agreement in the DoorDash cases. However, as a practical matter, it would be extraordinarily difficult in the time frame during which clients were apparently signed up for the plaintiffs' lawyers to have engaged in detailed individual discussions about engagement agreements and waivers of conflict of interest with as many plaintiffs as Keller Lenkner claims to represent. The sample DocuSign and witness statement documents I have read, the time that appears to be allotted to each executed agreement, and the fact that attorney Jeremy Troxel was involved in the creation of these documents, leads me to a presumption that the *CenturyLink* agreement may have substantial similarities to the engagement agreement used in the within case. Accordingly, with that presumed, the following paragraphs provide my opinions about that agreement, presented in order of that agreement's sections.

19.     Section 1 states that the attorneys will file "an individual arbitration" on behalf of the client. This makes it sound as if the plaintiff has one individual case, and does not make it clear that there will be thousands of such "individual arbitrations" lumped together for many purposes. The reference at the beginning of paragraph 8 ("the attorneys intend to represent many clients with claims like yours") is insufficient to describe the actual situation of a mass action case with thousands of plaintiffs.

20.     Moreover, in his letter to DoorDash of March 20, 2019, Mr. Keller states his desire to look to settle 3,000 claims, and states that he wants to proceed "simultaneously" on all arbitrations.

DECLARATION OF RICHARD ZITRIN                                    3:19-CV-07545-WHA & 3:19-CV-07646-WHA

The effect of this appears to be to necessarily lump them together for settlement purposes.

21.     Moreover, I understand that there is a pending class action settlement in the San Francisco Superior Court case of *Marciano v. DoorDash, Inc.*, No. 18-CGC-678969 that has not yet been approved in which the clients who engaged counsel for individual representation in this action would presumably be passive class members. Because the class has not been certified and no notice has gone out to class members, these persons would most likely be unaware of this class action. However, its existence, presumably known to Keller Lenkner, should have been disclosed to prospective clients so that they had the choice of simply going forward as passive class members rather than as individual clients.

22.     Section 2, paragraph six, states that the client will "authorize the attorneys to pursue [a] fee by asking any court or arbitrator for it…." There is nothing inappropriate about this in and of itself, so long as the lawyers later explain that an argument for their fees might interfere with an argument for a larger recovery for the clients. This, in my opinion, is a waivable conflict, but one that must be articulated and then waived, which is not done in this agreement.

23.     Section 2 sets forth a division of fees between Keller Lenkner and Troxel Law that does not meet the California requirements for sharing a fee. The California and minority rule, as opposed to the ABA Rule, allows referrals regardless of the extent of work put in by the respective lawyers, but also requires informed written consent from the client to the fee split, and must provide written notice to the client of the opportunity to seek independent counsel, and a reasonable time in which to do that.

24.     Section 3 states that the client will agree to settle for "full-value," meaning a settlement offer that fully compensates the client for the damages. This is helpful in solving the issue of agreeing to a settlement in advance, since it purports to be a "full" recovery. Moreover, the section provides that the client "may revoke or change this instruction" by email. However, during the course of litigation, damages may accrue that are beyond the "full-value" settlement contemplated here. This is particularly true in California, where certain remedies are far more liberal than other states. Moreover, it would be appropriate for the client to *confirm* his/her/their desire to settle at the time settlement is on the table, rather than requiring the client to act affirmatively to change this position,

Gibson, Dunn & Crutcher LLP

DECLARATION OF RICHARD ZITRIN                     3:19-CV-07545-WHA & 3:19-CV-07646-WHA

1    especially if new information may change the amount of compensation that the client could

2    reasonably obtain.

3          25.    Section 6 states that "the attorneys have the right to stop representing you at any time

4    if, in their professional judgment and consistent with their ethical responsibilities, they come to

5    believe that your potential claims are unlikely to result in a recovery…." This provision does not

6    abide by either ABA or California rules, which require counsel to withdraw only with permission of

7    the tribunal, be it court or arbitrator, and even then, only when the lawyer takes steps to avoid harm to

8    the client. In cases like this, such a "free pass" withdrawal is particularly onerous, because in the

9    event the vast majority accept settlement and a small minority do not, as described above, there

10   would be enormous and untoward pressure on the lawyers to simply say that the remaining claims are

11   no longer economically viable and then withdraw. While the claims may no longer be economically

12   advantageous to the attorneys, they may well remain economically viable to the clients.

13         26.    Section 8, entitled "Potential Conflicts," is grossly inadequate. While the paragraph

14   begins by acknowledging the existence of many clients, it goes on to say that "at this time" the

15   clients' interests all "align." This is only true if the lawyers turn a blind eye to all those issues I have

16   described above about the ways in which conflicts among clients will manifest themselves. The

17   statement "We know of no conflicts of interest that would have an adverse impact on our

18   representation of you," is simply, in my opinion, false. There are many adverse impacts lurking, and

19   while they can be waived, it is disingenuous in the extreme to merely state they don't exist. The

20   whole point of a conflict of interest waiver is to *anticipate* what could impair or impact representation

21   and then to get clients' informed consent to a waiver. Here, there is no request for a waiver, and no

22   discussion about the actual foreseeable consequences that would be likely to materially limit effective

23   representation.

24         27.    In paragraphs 2, 3, 4, and 5 of Section 8, the lawyers purport to describe the conflicts

25   of interest that they say are "possible" but which are, in my opinion, almost certain to occur in whole

26   or part. These paragraphs, respectively, do talk about a "limited pool," an "aggregate or 'lump sum'

27   settlement," a required threshold "percentage," and sharing "information about your claims." But

28   Section 8 makes *absolutely no mention* of what the lawyers will do in such situations, nor of how the

lawyers will protect their clients, nor of what their clients' choices are, nor of what their clients might, should they agree, waive by way of conflicts. Indeed, the section makes no reference at all to the actual substantive effect of any of these pitfalls – i.e., *nothing* about what difference it makes if there's a lump sum, or a required percentage, etc.

28.     Section 13 references an extremely broad power of attorney allowing the lawyers to "execute all documents connected with your claims." I have too often seen that this kind of blanket permission may result in the law firm signing a settlement agreement and even an allocation of settlement funds distribution document on behalf of the clients. It is inappropriately overbroad.

29.     I must accordingly conclude that, unless Keller Lenkner can demonstrate that its engagement agreement in the within cases is materially and substantially different than that in the CenturyLink matter, Keller Lenkner's representation of its clients herein falls far below the standards required by both the American Bar Association's ethical standards and those of the state of California.


I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct and that this declaration was executed in San Francisco, California on January 16, 2020.

Richard Zitrin

DECLARATION OF RICHARD ZITRIN                    3:19-CV-07545-WHA & 3:19-CV-07646-WHA

Gibson, Dunn &
Crutcher LLP

Exhibit A

DocuSign Envelope ID: 8D08423B-4D94-445A-89B9-9E5EC4CE5A7A



Keller | Lenkner

## CenturyLink Overbilling Compensation Claims

Dear Robert

Thank you for the opportunity to represent you in getting compensation for CenturyLink's overbilling practices. We take this responsibility seriously and will do our best to help you receive fair compensation.

The following documents are a questionnaire and our representation agreement. This agreement explains the scope of the work we will do as your attorneys.

If you have any questions or experience any difficulties completing this document, feel free to email us at: attorneys@centurylinkclaims.com. Or you can call our office at (800) 597-9765.

Best regards,

Jeremy Troxel
Founding Partner
Troxel Law, LLP
Jeremy@centurylinkclaims.com

---

About Your Legal Team-

Keller Lenkner LLC – Keller Lenkner is a law firm located in Chicago that represents consumers, employees, investors, and other plaintiffs in complex litigation across the country. You can learn more at www.kellerlenkner.com.

Troxel Law LLP – Troxel Law and its founder Jeremy Troxel represent injured consumers, employees, patients and other plaintiffs all over the United States. Troxel Law is currently building out its website. You can learn more about Jeremy at the website of his other law firm, Troxel, Krauss & Chapman, located at tkclaw.com.

DocuSign Envelope ID  8D08423B-4D94-445A-89B9-9E5EC4CE5A7A

Keller Lenkner

### CenturyLink Overbilling Compensation Questions

**To help us with your claim, please answer the below questions to the best of your ability. Once you have completed everything a copy will be sent to your email.**

Overbilling  Questions

What was the monthly price you were quoted when you signed up for service with CenturyLink?

$

On average, what was your actual monthly bill after you signed up?

$

Did you wind up paying that higher price?

Yes

Was any of this increase based on extra services you requested after signing up?

No

How much?

$

For how many months did you pay the higher price?

When was the last time that you paid the higher price?

Did CenturyLink place a negative report on your credit because of the overcharges?

Yes

Customer  Service Questions

Did you complain to CenturyLink about these overcharges?

Yes

Did CenturyLink refund your money?

No

DocuSign Envelope ID: 8D08423B-4D94-445A-89B9-9E5EC4CE5A7A

Informational Questions
_____

**The answers to these questions are essential because they allow us to keep in touch with you and, eventually, will allow CenturyLink to find your account records and determine how much they owe you.**

What is your date of birth?

What is your current address?

Street:

City:

States:                          Zip:

What is the name associated with your CenturyLink account?

What is the phone number associated with your CenturyLink account?

Was the address associated with your CenturyLink account the same as your current address?

 Yes

What is the address associated with your CenturyLink account?

Street:

City:

States:                          Zip:

Have you previously consulted with or hired another lawyer to bring a legal claim against CenturyLink?

 No

**Please review the answers to the questions above. When you are done, please press the "Confirm" button below.**

CASE 0:19-md-02795-MJD-KMM    Document 512-9    Filed 04/10/20    Page 27 of 32

## CenturyLink Compensation Claims
## Retainer Agreement

This agreement is between you, the client, on the one hand, and, on the other, Keller Lenkner LLC and Troxel Law LLP, the attorneys or us.

### 1. Scope of Representation

We will represent you to the best of our ability and comply with all professional standards of competence and integrity.

We agree to represent you in investigating and, if appropriate in the attorneys' opinion, filing an individual arbitration asserting consumer fraud and/or related claims against CenturyLink, Inc. and, if appropriate, its subsidiaries or affiliates (collectively, the "Company").

The attorneys shall have no obligation to represent you in any other matter, and no obligation to handle any appeal of any decision in this matter. If we think it will help reach a successful resolution of your claims, we may also pursue resolution of your claims outside of or before initiating arbitration, including in court.

### 2. Attorneys' Fees

You will not owe the attorneys anything unless we are successful in collecting a recovery, payment to you, or settlement for your claim.

You have the right to accept or reject any settlement offer made to you.

Under no circumstances will the attorneys collect an unreasonably large fee.

If your case does not result in a recovery to you, then the attorneys will collect no fee and you will owe nothing. If your case results in a recovery to you, then you will still not have to pay any costs or fees out of your own pocket, but the attorneys will collect a fee from the Company as follows:

If your case resolves before the commencement of an arbitration or court case in which you are a named party, then the attorneys will collect a flat-fee of $750 in exchange for preparing your claim for filing, making a demand of the Company, and negotiating the resolution. "Commencement" means, for an arbitration, the payment of all filing fees and the appointment of an arbitrator. For a court case, it means the filing of the case with a court. You will never have to pay these fees and costs out of your own pocket. If you win your claim, the law requires the Company to pay you these fees and costs in addition to the damages and penalties the Company owes you. The attorneys will collect these fees from the Company as part of any award or settlement and deduct them from the total recovery as their fee. You will be entitled to retain the full recovery net of this fee. You agree that $750 is a reasonable fee reflective of the time, effort, expense, and skill the attorneys will put into your case to get it to the point of pre-commencement resolution.

If your case resolves after commencement, then the attorneys will collect a lodestar-based reasonable attorney's fee and recover their litigation costs from the Company under any applicable fee-shifting law. Again, the attorneys will collect this fee from the Company, not from you. "Lodestar" means the amount of money that results when you multiply the attorneys' hourly rates by the number of hours the attorneys' spend on your case. You authorize the attorneys to pursue this fee by asking any court or arbitrator for it and you agree that it will belong to the attorneys.

You acknowledge that this fee is negotiable and is the result of an arm's length transaction between you and the attorneys.

You grant the attorneys a lien to secure payment of the fees and expenses described by this agreement.

Even though you will pay nothing unless you recover, some states' laws require that we disclose to you our regular hourly rates. The hourly rates for the attorneys and other billing professional staff who may work on your case range from $100 for junior paralegal staff to $950 per hour for senior partners. The attorneys reserve the right to update these rates on 60-days written notice to you.

The attorneys will divide any fee recovered between them, with 10% going to Troxel Law LLP and the rest to Keller Lenkner LLC.

## 3. Direction to Settle at Full Value

The attorneys will work to get you the maximum amount allowed under the law. By signing this Agreement, you instruct the attorneys to, without further direction or authorization from you, accept a "full-value" settlement offer. A full-value settlement offer is any settlement offer made to you by the Company that:

- pays to you an amount equal to or more than the amount of any overpayments you made to paid to the Company in the past 36 months. Based on the information you provided, this amount is $
- requires you to release only those claims against the Company related to its billing practices; and
- requires you to keep the terms of the settlement confidential, meaning that you will not disclose them except to your immediate family, lawyers, and tax or financial professionals.

You may revoke or change this instruction by sending an email with your new instructions to centurylinkclaims@klclientservices.com. If you do not revoke or change this instruction and we accept, on your behalf, a qualifying settlement, then we will execute the necessary paperwork on your behalf and direct payment to the address we have on file for you.

## 4. Client's Duties

a. Contact Information – You agree to inform the attorneys by email to centurylinkclaims@klclientservices.com if you change your address, phone number, or email address. You agree to do so within two weeks of the change.

b. Participation in Discovery – You may be required to locate and produce documents, answer written questions, or appear at a time and place to answer questions under oath. You agree to make yourself available to do these things on reasonable notice.

c. Participation in Hearing or Trial – You agree to make yourself available to participate in a hearing or trial on your claims on reasonable notice.

d. Document Preservation – You must not destroy, delete, or discard documents and other information sources in your possession that are relevant to your potential claims. This includes physical, paper documents and electronic documents like email or social media posts, whether on a computer, phone, or other device.

You agree and acknowledge that your failure to fulfill any of these duties is grounds for the attorneys to stop representing you.

DocuSign Envelope ID: 8D08423B-4D94-445A-89B9-9E5EC4CE5A7A

## 5. Third-Party Liens

Certain third parties may have, or may assert in the future, liens on any recovery you might obtain. You recognize and understand that any liens must be resolved before we can distribute to you your portion of any recovery. You acknowledge that we may engage a company that specializes in resolving these types of liens, and that any fee paid to such company will be treated as an expense under this Agreement. Lien resolution could reduce or eliminate your recovery. If any liens on the proceeds of this matter are asserted, you authorize us to hold in trust any funds we reasonably believe are or may be subject to any liens, until such liens are resolved and released.

## 6. Attorneys' Right to Withdraw

You acknowledge that the attorneys have the right to stop representing you at any time if, in their professional judgment and consistent with their ethical responsibilities, they come to believe that your potential claims are unlikely to result in a recovery for any reason, including, but not limited to, the Company's inability to pay.

## 7. Client's Right to Terminate Attorneys

You may terminate attorneys at any time by written notice by email to centurylinkclaims@klclientservices.com. If you do, you agree that the attorneys are entitled to a reasonable fee and reimbursement of costs for the work performed prior to termination.

## 8. Potential Conflicts

The attorneys intend to represent many clients with claims like yours. At this time, your interests and the interests of other clients align. We know of no conflicts of interest that would have an adverse impact on our representation of you. It is, however, possible that conflicts may arise in the future, including:

We discover that there is a limited pool of assets from which recovery is reasonably likely (for example, an insurance policy), and those assets are insufficient to pay all of our clients the full value of their claims.

A defendant offers an aggregate or "lump sum" settlement to all of our clients that does not specify the amount each client will receive.

A defendant offers to settle, but only if a certain percentage, or even all, of our clients accept the proposed settlement.

We may also be required by the applicable rules of professional conduct to share material information about your claims and negotiating position with our other clients with similar claims. While we will try to avoid these issues if it is practical to do so, they might occur. If any conflict of interest affecting you does arise, we will inform you promptly and work with you on how best to proceed in accordance with the applicable rules of professional conduct.

## 9. No Guarantee

You acknowledge that the attorneys have not and will not provide any guarantee about the outcome of your claims.

DocuSign Envelope ID: 8D08423B-4D94-445A-89B9-9E5EC4CE5A7A

## 10. Association of Counsel

You acknowledge that the attorneys may associate with other counsel to assist with your potential claims and you authorize us to do so on written notice to you. We will pay for associated counsel without passing the expense on to you.

## 11. Entire Agreement and Choice of Law

This Agreement contains the entire agreement of the parties. It cannot be modified or canceled except in writing signed by all parties. This Agreement will be construed in accordance with the laws of Illinois notwithstanding choice of law rules.

## 12. Arbitration

In the event of any dispute, controversy, or claim between us (or our respective heirs, successors, assigns, or affiliates) arising out of, relating to, or in connection with your engagement of us (any of the foregoing, a "dispute"), you and we waive the right to seek remedies in court, including the right to a jury trial, and agree to submit said dispute exclusively to binding individual arbitration conducted by a single arbitrator subject to the rules of the American Arbitration Association ("AAA"). The arbitrator shall not have the authority to decide any claims as a class, collective, or representative action. The seat of the arbitration will be in Chicago, Illinois unless AAA determines that this location will impose undue hardship, in which case the location will be set by AAA. The parties will share the expense of arbitration equally, except that if you represent that this would impose an undue hardship, you will initially be responsible only for a filing fee equal to the amount that would be necessary to file your claim in court. In that event, the attorneys will advance the remaining fees and expenses on your behalf and the arbitrator will determine any additional amount you can pay without sustaining undue hardship. Threshold issues of arbitrability shall be decided by the arbitrator, including the scope of this agreement and whether a controversy or claim arises out of or relates to your engagement of us.

You are not required to agree to the above paragraph for us to represent you. If you do not want the above paragraph to apply, simply let us know within 90 days of signing this agreement by sending an email to centurylinkclaims@klclientservices.com indicating that you do not want the arbitration provision of this agreement to apply. The above paragraph does not apply if it is prohibited by the applicable attorney ethics rules.

## 13. Power of Attorney

Consistent with the attorney ethics rules and other requirements for powers of attorney, you grant us the power of attorney to execute all documents connected with your claims.

## 14. No Tax or Benefit Advice

You acknowledge and agree that the attorneys cannot and will not provide legal advice regarding the tax and government benefit implications of you receiving any settlement or sum of money.

## 15. Express Written Consent to Send Text Messages and Make Automated Calls

You provide us and our designees and agents your express permission and authorization to send text messages to the number or numbers you provide to us or our agents during the intake process and thereafter. You represent that you are the subscriber of those numbers and have the authority to give such consent. By executing this agreement, you authorize us to deliver or cause to be delivered to you telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice.

You are not required to provide us this authorization for us to represent you. If you do not wish to receive text messages, please let us know within 90 days of signing this agreement by sending an email to centurylinkclaims@klclientservices.com indicating that you do not wish to receive text messages.

## 16. Other Law Firms

You represent to us that you have not signed an agreement with another law firm to pursue any claims against the Company for you and that you do not recall signing such an agreement. To the extent you did and you do not remember, by signing this agreement, you are exercising your right to terminate any prior agreement with any other law firm in connection with your claims against the Company. You authorize the attorneys to communicate with any other firm about all issues related to any claims you have against the Company, and you agree that by signing this agreement, you are instructing any other firm to discuss your Company claims only with us and not you.

## 17. Authority to Sign

You represent that you have read and understood this agreement and have authority to sign it.

** ** **

We look forward to working to get you fair compensation.

Date:

_____

By:

# Declaration in Support of Application for Waiver of Fees – California Consumers

In consumer arbitrations in California, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of the arbitration fees.

NAME OF CONSUMER: _____

ADDRESS:_____

_____

GROSS MONTHLY INCOME: _____

NUMBER OF PERSONS IN HOUSEHOLD: _____

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on _____, at _____, California.

_____

Signature of Consumer