# EXHIBIT 2

## AGREEMENT - TKC

Dr. Joseph Piacentile ("Piacentile"), Brian Krauss, Esq. ("Krauss"), and Jeremy Troxel, Esq. ("Troxel") (collectively, the "Parties") agree to the following terms to resolve all disputes between them relating to their business relationships.

WHEREAS, the Parties are partners in or have done business with a D.C. partnership Troxel, Krauss & Chapman LLP ("TKC LLP"), and Troxel, Krauss & Chapman LLC, ("TKC LLC"), a limited liability company formed under the common law of Puerto Rico (collectively, the "TKC Firms"); and

WHEREAS, the Parties have also in the past been engaged in various related business relationships and been parties to various related agreements; and

WHEREAS, various disputes have arisen with regard to these relationships which the Parties wish to amicably resolve; and

WHEREAS, the Parties have agreed that TKC LLP should be wound down and liquidated and that each of the Parties should receive fair compensation for their previous involvement with the entity.

NOW THEREFORE, for good and valuable consideration, the Parties agree as follows:

1. Notwithstanding anything to the contrary herein and the extent such payments are made directly by co-counsel, payments made hereunder shall be deemed made in accordance with Sections 7, 8 and 9 for any accounting or bookkeeping purposes.

2. Subject to the Accounting (as defined below), TKC LLC assumes the debts of and recognizes Piacentile and Troxel as creditors of TKC LLC in consideration of TKC LLP distributing 100% of its revenue to Troxel Krauss & Chapman LLC ("TKC LLC), subject to distribution letters referred to herein and pursuant to the terms set forth below and;

3. TKC LLP will cease the use of "Troxel" in its name and formally change its name to exclude 'Troxel' within 30 days of the execution of the agreement.

4. Krauss and Troxel remain the sole attorneys and owners of TKC LLC. To avoid any doubt, only Krauss and Troxel will be permitted to represent themselves as attorneys, partners, owners, members, employees, or agents of TKC LLC; Krauss and Troxel will be the only individuals permitted to inquire, assist, or in any other way represent any TKC LLC client matter. Violation of this provision will nullify the agreement under 8(a).

13. **Malpractice Insurance Coverage**: Upon the execution of this Agreement, Troxel shall make payment to TKC LLP's insurance provider of 37% of an amount necessary to maintain the current legal malpractice insurance premiums for TKC LLP, which shall later be fully reimbursed to Troxel through an addition to his partnership disbursements. The Parties and Troxel acknowledge that the maintenance of appropriate malpractice insurance coverage is necessary for TKC LLP as a going concern. Krauss and/or Troxel shall provide to Piacentile's counsel, within thirty (30) days of the execution of this Agreement, a copy of all malpractice insurance policy information for TKC LLP's malpractice coverage along with all premium amounts due and owing and evidence of the payment of same.

14. **Consideration**: As a precondition to receiving and in partial consideration for this compensation, Krauss agrees to return all TKC LLP documents and materials, remove himself from all firm email and administrative accounts, remove himself from all firm bank accounts, release all non-competes and sign any documents necessary to assist Troxel to wind down the business of TKC LLP during the dissolution process, and provide such assistance as is requested to assist with any lawsuits filed by TKC LLP and to perform only such duties as may be requested by TKC LLP. To the extent Krauss is in possession of any tax returns for TKC LLP or TKC LLC, he will provide same to Piacentile and Troxel within ten (10) days of the execution of this Agreement.

15. **Indemnification**: The Parties agree to indemnify and hold harmless one another for any actions, inactions, or omissions they have individually undertaken or failed to perform on behalf of the WBI firms, TKC LLP or TKC LLC that creates financial or criminal liability for the other partners or the TKC Firms.

16. **Tax Liability**: Each of the Parties will be responsible for his own tax liability incurred as a result of this Agreement.

17. **Releases**: The Parties on behalf of themselves as individuals and on behalf of the WBI Firms, TKC firms and Troxel Law firms shall exchange general and mutual releases relating to any claims that could have been brought by and amongst the Parties for any actions prior to the date of this Agreement. These releases shall extend to the employees or contractors associated with any of the WBI Firms, TKC Firms, and Troxel Law LLC and Troxel Law LLP.

18. **Non-Solicitation**: Following the date of the execution of this agreement, Krauss and Troxel will not solicit in writing or by any other method of communication (including without limitation email, text, phone, etc.) any partner, professional, employee or agent of the TKC firms without the written consent of Piacentile.

19. **Non-Disparagement**: The Parties agree not to disparage each other or their businesses in the future. Furthermore, the Parties will confer and agree on a simple and short joint statement to issue to third parties regarding the dissolution of TKC LLP.

20. **Representations and Warranties**: Each of the Parties hereto hereby represents and warrants to the other Parties that this Agreement: (i) has been validly executed and delivered by such party; (ii) has been duly authorized by all corporate or other action of such party necessary for the authorization thereof; (iii) does not violate or interfere with any contract or legal requirement to such party. The Parties each represent to each other that they are under no obligation, either oral or written, that would restrict or inhibit their ability to execute and deliver this Agreement or take the actions or to complete the transactions contemplated herein.

21. **Confidentiality**: This Agreement is highly confidential and the existence of it's contents will not be disclosed to any other third party without the written consent of all parties.

22. **Governing Law**: The laws of the District of Columbia shall apply to any interpretation of this Agreement without reference to any conflict of laws of any jurisdiction.

23. **Arbitration**: Any dispute arising out of or related to this agreement shall be subject to binding arbitration with JAMS Washington, D.C., Office, at a location mutually agreeable to the Parties and the Arbitrator.

24. **Counterparts**: This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. This Agreement is solely for the benefit of the parties hereto, and shall not be construed to give rise to or create any liabilities or obligation to, or to afford any claim or cause of action to, any other person or entity. This Term Sheet shall be superseded in its entirety by the Agreement upon the approval and execution thereof. Any executed signature page delivered by facsimile or e-mail transmission shall be binding to the same extent as an original executed signature page, with regard to any agreement subject to the terms hereof or any amendment thereto.

IN WITNESS WHEREOF, the parties hereto have duly caused this Agreement to be executed as of the dates written below.


BY:                                                              BY:


_____              _____
Brian Krauss, Esq.                                          Dr. Joseph Piacentile
Date:_____               Date:_____

BY:_____
Jeremy Troxel, Esq.
Date:_____

IN WITNESS WHEREOF, the parties hereto have duly caused this Agreement to be executed as of the dates written below.

BY:

Brian Krauss, Esq.
Date:

BY: ____
Jeremy Troxel, Esq.
Date:

BY:

Dr. Joseph Piacentile
Date:

{00122773;v1}
8