UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JOSEPH PIACENTILE, M.D., J.D., an
individual residing in the Commonwealth
of Puerto Rico,

                Plaintiff,

       - against -

JEREMY TROXEL, ESQ., a New York
licensed attorney currently residing in
California; and JONATHAN RUBLEE,
an individual residing in Pennsylvania,

                Defendants.
-------------------------------------------------------X

20-CV-05252 (JMF)


### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS AND COMPEL ARBITRATION

The Law Offices of Neal Brickman, P.C.
By:    Neal Brickman (NB0874)
        Ethan Leonard (EL2497)
420 Lexington Avenue - Suite 2440
New York, New York 10170
(212) 986-6840
Neal@brickmanlaw.com
Attorneys for the Defendants

Table Of Contents

Preliminary Statement         . . . . . . . . . . . . . . . . . . . . . .         2

Statement Of Facts         . . . . . . . . . . . . . . . . . . . . . .         3

Argument         . . . . . . . . . . . . . . . . . . . . . .         9

      Point I

      THE CLAIMS RAISED IN THE COMPLAINT ARE
      SUBJECT TO MANDATORY ARBITRATION
      CLAUSES         . . . . . . . . . . . . . . . . . . . . . .         9

      Point II

      SANCTIONS ARE WARRANTED         . . . . . . . . . . .         14

Conclusion         . . . . . . . . . . . . . . . . . . . . . .         15

Table of Authorities

*American Express Co. v. Italian Colors Restaurant*,
    133 S.Ct. 2304 (2013)    . . . . . . . . . . . . . . . . . .     9

*Andrews v. Steinberg*,
    122 Misc.2d 468, 471 N.Y.S.2d 764
    (S.Ct., NY Cty 1983)    . . . . . . . . . . . . . . . . . .     3

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009)    . . . . . . . . . . . . . . . . . .     13

*Benzemann v. Citibank N.A.*,
    622 F. App'x 16 (2d Cir. 2015)    . . . . . . . . . . . . .     1

*Borrero v. Ruppert Housing Co., Inc.*,
    No. 08cv5869 (HB), 2009 U.S. Dist. LEXIS 52174,
    2009 WL 1748060 (S.D.N.Y. June 19, 2009)    . . . . . . .     1

*Brennan v. Bally Total Fitness*,
    198 F.Supp.2d 377 (S.D.N.Y. 2002)    . . . . . . . . . . . . .     1

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)    . . . . . . . . . . . . . . . . . .     12

*Butler v. Enter. Integration Corp.*,
    459 F. Supp.3d 78 (DDC 2020)    . . . . . . . . . . . . .     12

*Chen-Oster v. Goldman, Sachs & Co.*,
    449 F. Supp.3d 216 (SDNY 2020)    . . . . . . . . . . . . .     10

*Cox v. Perfect Bldg. Maint. Corp.*,
    No. 16cv7474 (VEC), 2017 U.S. Dist. LEXIS 111202,
    2017 WL 3049547  (S.D.N.Y. July 18, 2017)    . . . . . . .     1

*Dachowitz v. Kranis*,
    61 A.D.2d 783 (2nd Dept 1978)    . . . . . . . . . . . . .     3

*Delgado v. Ocwen Loan Servicing, LLC*,
    2016 U.S.Dist Lexis 119069; 2016 WL 4617159
    (EDNY 2016)    . . . . . . . . . . . . . . . . . .     12

*Doctor's Associates, Inc. v. Alemayehu*,
    934 F.3d 245 (2nd Cir. 2019)    . . . . . . . . . . . . .    9

*Dowley v. Dewey Ballantine, LLP*,
    2006 U.S. Dist. LEXIS 23304, 2006 WL 1102768
    (D.D.C. Apr. 26, 2006)    . . . . . . . . . . . . . . . . . .    10

*Fed. Ins. Co. v. Metro. Transp. Auth.*,
    2018 U.S. Dist. LEXIS 183352,
    2018 WL 5298387 (SDNY October 25, 2018)    . . . . . . .    1

*Fox v. Computer World Servs. Corp.*,
    920 F.Supp.2d 90 (D.D.C. 2013)    . . . . . . . . . . . . .    13

*Gilbert v. Donahoe*,
    751 F.3d 303 (5th Cir. 2014)    . . . . . . . . . . . . .    1

*Goldberg v. Sovereign Bancorp, Inc.*,
    No. 10cv6263 (DAB), 2011 WL 13261837
    (S.D.N.Y. Aug. 19, 2011)    . . . . . . . . . . . . .    1

*Hong v. Belleville Dev. Grp., LLC*,
    No. 15cv5890 (RJS), 2016 U.S. Dist. LEXIS 113008,
    2016 WL 4481071 (S.D.N.Y. Aug. 17, 2016)    . . . . . . .    1

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
    698 F.3d 58 (2nd Cir. 2012)    . . . . . . . . . . . . .    12

*Klapper v. Shapiro*,
    154 Misc.2d 459 (Sup. Ct. NY  1992)    . . . . . . .    3

*Mahe v. Tzell Travel, LLC*,
    No. 16cv9478 (RWS), 2017 U.S. Dist. LEXIS 88488,
    2017 WL 2493136 (S.D.N.Y. June 8, 2017)    . . . . . . .    1

*Martirano v. Frost*,
    25 N.Y.2d 505 (1969)    . . . . . . . . . . . . . . . . . .    3

*Milgrim v. Backroads, Inc.*,
    142 F. Supp. 2d 471 (S.D.N.Y. 2001)    . . . . . . .    1

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)    . . . . . . . . . . . . . . . . . .    11

*Moore v. Manufacturers' Nat'l Bank,*
    123 N.Y. 420 (1890)    . . . . . . . . . . . . . . . . . .    3

*New York Univ. v. Continental Ins. Co.,*
    87 N.Y.2d 308 (1995)    . . . . . . . . . . . . . . . . . .    12

*NYP Holdings, Inc. v. Newspaper and Mail Deliverers'*
*Union of New York and Vicinity,*
    01 CIV. 4451 (SAS), 2002 U.S. Dist. LEXIS 13151,
    2002 WL 1603145 (S.D.N.Y. July 18, 2002)    . . . . . . .    1

*Oehme, van Sweden & Assocs, Inc. v. Maypaul Trading & Servs., LTD.,*
    902 F. Supp.2d 87 (DDC 2012)    . . . . . . . . . . . . .    13

*Orange Cnty. Choppers, Inc. v. Goen Techs. Corp.,*
    374 F. Supp. 2d 372 (S.D.N.Y. 2005)    . . . . . . .    1

*Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union, Local One,*
    903 F.2d 924 (2nd Cir. 1990)    . . . . . . . . . . . . .    12

*Prima Paint Corp., v. Flood & Conklin Mfg. Co.,*
    388 U.S. 395 (1967)    . . . . . . . . . . . . . . . . . .    12

*Ragone v. Atl. Video at Manhattan Ctr.,*
    595 F.3d 115 (2nd Cir. 2010)    . . . . . . . . . . . . .    13

*Restea v. Brown Harris Stevens, LLC,*
    2018 U.S. Dist. LEXIS 118859;
    2018 WL 3435060 (SDNY July 16, 2018)    . . . . . . .    1

*Riley v. BMO Harris Bank, N.A.,*
    61 F. Supp. 3d 92 (DDC 2014)    . . . . . . . . . . . . .    13

*Ross v. AM. Express Co.,*
    547 F.3d 137 (2nd Cir. 2008)    . . . . . . . . . . . . .    13

*Schnabel v. Trilegiant Corp.,*
    697 F.3d 110 (2nd Cir. 2012)    . . . . . . . . . . . . .    9

*Sinnett v. Friendly Ice Cream Corp.,*
    319 F. Supp. 2d 439 (S.D.N.Y. 2004)    . . . . . . .    1

*Space, Inc. v. Simonwitz*,
 No. 08-cv-2854, 2008 U.S. Dist. LEXIS 51782
  (S.D.N.Y. July 8, 2008) . . . . . . . . . . . . . . . . . .  12

*State of New York v. Oneida Indian Nation of New York*,
 90 F.3d 58 (2nd Cir. 1996) . . . . . . . . . . . . . . . . . .  10

*Sutherland v. Ernst & Young, LLP*,
 726 F.3d 290 (2nd Cir. 2013) . . . . . . . . . . . . . . . . . .  9

*The Savage is Loose Co. v. United Artists Theatre Circuit*,
 413 F Supp 555 (SDNY 1976) . . . . . . . . . . . . .  3

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
 363 U.S.574 (1960) . . . . . . . . . . . . . . . . . .  10

*Va. Acad. of Clinical Psychologists v. Group Hospitalization & Med. Servs.*,
 878 A.2d 1226 (DDC 2005) . . . . . . . . . . . . .  12

*Wall v. CSX Transp., Inc.*,
 471 F.3d 410 (2d Cir. 2006) . . . . . . . . . . . . .  12

*W&T Travel Servs., LLC v. Priority One Servs.*,
 69 F. Supp. 3d 158 (DDC 2014) . . . . . . . . . . . . .  11

*Williams v. Williams*,
 23 N.Y.2d 592 (1969) . . . . . . . . . . . . . . . . . .  3

*Wiser v. Koval*,
 50 A.D.2d 523 (1st Dept 1975) . . . . . . . . . . . . .  3

*Wolf v. Westwood Mgmt. LLC*,
 503 F.Supp.2d 274 (DDC August 27, 2007) . . . . . . .  10,11,13

*Zimmerman v. UBS AG*,
 2018 U.S. Dist. LEXIS 144133 (SDNY 2018) . . . . . . .  14

Defendants, Jeremy Troxel ("Troxel") and Jonathan Rublee ("Rublee" and together with Troxel, "Defendants" or "defendants"), respectfully submit this Memorandum of Law in support of their Motion to Compel Arbitration and for dismissal of Plaintiff's, Joseph Piacentile ("Piacentile", "Plaintiff", or "plaintiff", and together with Defendants, the "Parties") First Amended Complaint (the "Complaint"; Dkt No. 4; Attached to the Leonard Affirmation as Ex. "1") under 12(b)(1) for lack of subject matter jurisdiction. *See e.g., Orange Cnty. Choppers, Inc. v. Goen Techs. Corp.*, 374 F. Supp. 2d 372, 373 (S.D.N.Y. 2005); see also, *NYP Holdings, Inc. v. Newspaper and Mail Deliverers' Union of New York and Vicinity*, 01 CIV. 4451 (SAS), 2002 U.S. Dist. LEXIS 13151, 2002 WL 1603145, at *1 n.2 (S.D.N.Y. July 18, 2002); *Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377, 381 (S.D.N.Y. 2002)); *Gilbert v. Donahoe*, 751 F.3d 303, 306 (5th Cir. 2014); *Goldberg v. Sovereign Bancorp, Inc.,* No. 10cv6263 (DAB), 2011 WL 13261837, at *2 (S.D.N.Y. Aug. 19, 2011); *Hong v. Belleville Dev. Grp., LLC*, No. 15cv5890 (RJS), 2016 U.S. Dist. LEXIS 113008, 2016 WL 4481071, at *3 (S.D.N.Y. Aug. 17, 2016); *Sinnett v. Friendly Ice Cream Corp.*, 319 F. Supp. 2d 439, 445 (S.D.N.Y. 2004).[1]

---

[1] Judicial notice of the applicable arbitration clauses provides an alternative basis to dismiss or compel arbitration under FRCP 12(b)(6) (*see e.g., Cox v. Perfect Bldg. Maint. Corp.*, No. 16cv7474 (VEC), 2017 U.S. Dist. LEXIS 111202, 2017 WL 3049547, at *3 (S.D.N.Y. July 18, 2017)) or under the Federal Arbitration Act ("FAA") (*see e.g., Borrero v. Ruppert Housing Co., Inc.*, No. 08cv5869 (HB), 2009 U.S. Dist. LEXIS 52174, 2009 WL 1748060, at *2 (S.D.N.Y. June 19, 2009); *Milgrim v. Backroads, Inc.*, 142 F. Supp. 2d 471, 476 (S.D.N.Y. 2001)); *Benzemann v. Citibank N.A.*, 622 F. App'x 16, 18 (2d Cir. 2015); *Fed. Ins. Co. v. Metro. Transp. Auth.,* 2018 U.S. Dist. LEXIS 183352, 2018 WL 5298387 (SDNY October 25, 2018); *Restea v. Brown Harris Stevens, LLC*, 2018 U.S. Dist. LEXIS 118859; 2018 WL 3435060 (S.D.N.Y. July 16, 2018); *Mahe v. Tzell Travel, LLC*, No. 16cv9478 (RWS), 2017 U.S. Dist. LEXIS 88488, 2017 WL 2493136, at *4 (S.D.N.Y. June 8, 2017).

Preliminary Statement

The Parties entered into a broad, valid, and binding arbitration agreement that encompasses all of the substantive claims asserted by the Plaintiff in this action. Because of the existence of that arbitration agreement, this Court does not have jurisdiction over any of the several causes pleaded by the Plaintiff in his amended complaint.  In fact, the binding arbitration agreement lies within the very agreements that Plaintiff references throughout his complaint; agreements that are integral to each of his various causes of action.  After working together and/or on related business entities, disagreements arose between the Parties.  After months of negotiations throughout much of 2019, on or about November 1, 2019, Piacentile and Troxel, along with Brian Krauss ("Krauss"), individually and on behalf of their various businesses, entered into two agreements designed to resolve all issues between them.

The first agreement was entitled "Agreement-TKC"[2] and contained the following arbitration provision at Paragraph 23:

> **Arbitration**: Any dispute arising out of or related to this agreement shall be subject to binding arbitration with JAMS Washington, D.C., Office, at a location mutually agreeable to the Parties and the Arbitrator.

The second agreement was entitled "Mutual and General Release Agreement" (hereinafter, the "Release Agreement") and was dated October 31, 2019 and contained a similar arbitration provision within Paragraph 6 "Governing Law":

> Each party hereto irrevocably waives its right to a jury trial and unconditionally consents to submit to the exclusive jurisdiction of binding

---

[2]  The Complaint refers to this Agreement as the "TKC Settlement Agreement".  Defendants hereinafter will refer to the Agreement-TKC as the TKC Settlement Agreement so as to avoid any confusion. Relevant portions of the TKC Settlement Agreement are attached as Exhibit "2" to the Leonard Declaration.

> arbitration, to be administered by JAMS Washington, D.C. office, at a location mutually agreeable and convenient for the Parties and the arbitrator, for any action, dispute, suit or proceeding arising out of or relating to this Mutual Release.

(Relevant portions of the Release Agreement are attached as Exhibit "3" to the Leonard Affirmation).  Each of the causes of action pleaded in the Amended Complaint  is either mooted or explicitly pre-empted by the applicable written arbitration agreements.[3]   There is simply no basis not to honor the arbitration provisions, dismiss this instant case, direct that the Parties appear for binding arbitration as they unconditionally consented to do, and award Defendants their costs and expenses in having to file the instant motion.

Statement of Facts

Among the erroneous, *ad hominen* attacks on Troxel in the Complaint, Piacentile iterates the following allegations[4]:

---

[3] Notably, a vast majority of the claims alleged by Plaintiff are also subject to summary dismissal based on the comprehensive general releases executed by, *inter alia*, Plaintiff and Mr. Troxel in those same agreements.  The general releases in question are dispositive and will subject a majority of the pending claims to dismissal before the arbitrator.  Defendants specifically reserve their right to raise such defenses should the Court not be inclined to send this entire matter to arbitration as warranted by the plain language of the agreements between the Parties, the Federal Arbitration Act, and all of the relevant case law.

[4] Defendants reject the veracity of almost all of the allegations in the Complaint and recite certain of the allegations by Plaintiff not to suggest that same are accurate, but to demonstrate that even under Plaintiff's skewed reality, this action should properly be dismissed and sent to arbitration.  In addition, Defendants retain all their rights with regard to abjectly impertinent, extraneous, malicious, and defamatory statements set forth in the Complaint. See *e.g., The Savage is Loose Co. v. United Artists Theatre Circuit*, 413 F Supp 555, 561 (SDNY 1976); *Klapper v. Shapiro*, 154 Misc.2d 459, 460; 586 N.Y.S.2d 846, 848 (Sup. Ct. NY  1992); *Martirano v. Frost*, 25 N.Y.2d 505, 508 (1969); *Moore v. Manufacturers' Nat'l Bank*, 123 N.Y. 420 (1890); *Wiser v. Koval*, 50 A.D.2d 523 (1st Dept 1975); *Dachowitz v. Kranis*, 61 A.D.2d 783, 785 (2nd Dept 1978); *Williams v. Williams*, 23 N.Y.2d 592, 599 (1969); *Andrews v. Steinberg*, 122 Misc.2d 468, 476, 471 N.Y.S.2d 764, 771 (S.Ct., NY Cty 1983).

Piacentile met Troxel approximately 6 years ago when Troxel began dating Piacentile's daughter. (Compl. ¶4).  In or about, October 30, 2016 Piacentile collaborated with Krauss to form The Brian Krauss Law Firm d/b/a Whistleblowers International ("WBI"). (Compl. ¶8).  Through Piacentile, Troxel became a part of TKC LLP which was formed on October 24, 2017 and was to specialize in class action arbitration and mass torts. (Compl. ¶¶13-4).  In early 2019, Troxel announced that he intended to move to California with Plaintiff's daughter, a move that came as a surprise to Plaintiff. (Compl. ¶19).  Plaintiff then contends –  wholly fallaciously – that Defendants then perpetrated a variety of improper acts which constitute the purported bases for the various causes of action in the Complaint, but that such acts were discovered in March 2019 at which point it "became clear that TKC LLP would have to be wound down and liquidated." (Compl. ¶29).  As there were clearly ongoing disputes between, *inter alia*, the Parties, over several months Plaintiff and Troxel, along with Krauss negotiated a settlement agreement, culminating with an October 23, 2019 meeting between Plaintiff, Troxel, Krauss and their respective counsel and the TKC Settlement Agreement (Compl. ¶36).

Plaintiff then identifies various obligations under the TKC Settlement Agreement that he contends – again Defendants vehemently dispute any allegations of wrongdoing – Defendants violated and for which they should be held accountable. (Compl. ¶¶38-48).  Despite citing to the TKC Settlement Agreement, Plaintiff blatantly, purposefully, and improperly fails to mention the broad and comprehensive arbitration provision that he agreed to in executing the TKC Settlement Agreement.

The TKC Settlement Agreement was designed to resolve, *inter alia*, "...all disputes

4

between them relating to their business relationships" and specifically references resolving issues

concerning TKC LLP, TKC LLC, and any past various related business relationships and various

related agreements to which Plaintiff, Troxel, and/or Krauss were parties. The TKC also included

both an Indemnification Provision:

> 15.    Indemnification: The Parties agree to indemnify and hold harmless
> one another for any actions, inactions, or omissions they have individually
> undertaken or failed to perform on behalf of the WBI firms, TKC LLP or
> TKC  LLC that creates financial or criminal liability for the other partners
> or the TKC Firms.

and also a release provision:

> 17.    Releases: The Parties on behalf of themselves as individuals
> and on behalf of the WBI Firms, TKC  firms and Troxel Law firms
> shall exchange general and mutual releases relating to any claims
> that could have been brought by and amongst the Parties for any
> actions prior to the date of this Agreement.  These releases shall
> extend to the employees or contractors associated with any of the
> WBI Firms, TKC Firms, and Troxel Law LLC and Troxel Law LLP.

It is also telling that Plaintiff also completely disregards the very existence of the Release

Agreement that he, along with Troxel and Krauss, individually and on behalf of their respective

business entities, executed at or about the same time.  The Release Agreement was made

between Plaintiff, Troxel, and Krauss, individually and on behalf of their various business

entities, including, TKC LLP, TKC LLP,  Whistleblowers International LLP (" WBI LLP"),

Whistleblowers International LLC (" WBI LLC"), Troxel Law LLC (" Troxel LLC"), and Troxel

Law LLP (" Troxel LLP").  The Release Agreement specifically asserted that:

> A.    Concurrently with the execution and delivery of this Mutual
> and General Release Agreement, Troxel, Krauss and Piacentile have
> entered into a settlement agreement, dated as of October  30,  2019
> (the "TKC  Settlement  Agreement"), in order to settle all disputes
> between them as they relate to the TKC Firms.

> B.     Pursuant to the TKC Settlement Agreement's Paragraph 17,

5

the Parties have agreed to exchange "general and mutual releases relating to any claims that could have been brought by and amongst the Parties for any actions prior to the date of this Agreement. These releases shall extend to the employees or contractors associated with any of the WBI Firms, TKC Firms, and Troxel Law LLC and Troxel Law LLP."

C.      The Parties shall each enjoy substantial direct and indirect benefits as a result of the TKC Settlement Agreement, and thus the Parties' execution, delivery and performance of this Mutual Release is in the best interests of the Parties.

The Release Agreement contained a general release from, *inter alia*, Plaintiff to "each Party and their respective shareholders, members, owners, trustees, partners, principals, directors, officers, employees, agents, affiliates, spouses, beneficiaries, heirs, successors, and  assigns...." , and further contained a provision that each Party, including Plaintiff, acknowledged and agreed that "no change in the nature or terms of the TKC Settlement Agreement, or other agreements, instruments or contracts evidencing, related to or attendant upon the Settlement Agreement (including any novation) shall discharge all or any part of the Mutual Releases granted by this agreement, it being the purpose and intent of the Parties hereto that the covenants and agreements  set forth herein are absolute, unconditional and irrevocable under any and all circumstances."

The Complaint alleges seven (7) causes of action, each for relief governed by the TKC Settlement Agreement and the Release Agreement (together the "Agreements"), and the broad arbitration clauses contained therein.[5] The First Cause of Action seeking injunctive relief seeks the maintenance of documents which directly relate to parties to the Agreements (which

---

[5] Many of the causes of action will also be subject to summary dismissal in the arbitration based on the releases in the Agreements.

Defendants have further agreed to stipulate to – but which Plaintiff has not); compliance with a specific term of the TKC Settlement Agreement; and precluding Troxel from taking new clients on behalf of TKC as it is in the wind-down process, a process specifically governed by the TKC Settlement Agreement.[6]  This cause of action should be arbitrated.

The second cause of action is for breach of the TKC Settlement Agreement and also must be arbitrated.  The third cause of action for tortious interference involves allegations concerning actions taken before the Agreements, and/or which are inextricably intertwined with the Agreements and subject to the releases and must be arbitrated.  The fourth cause of action for unjust enrichment concerns payments made prior to March 2019 – and certainly well before the Agreements – and must be arbitrated.  The fifth cause of action for usurpation of partnership opportunities from TKC LLP is based on allegations concerning conduct effected prior to the Agreement and was directly addressed by, *inter alia*, the TKC Settlement Agreement which specifically encompassing the winding down of TKC LLP. (Compl. ¶¶35-6). This cause of action must be arbitrated. The sixth cause of action for breach of fiduciary duty similarly relies on allegations concerning conduct allegedly perpetrated prior to March 2019 (Compl. ¶29) and, thus, also must be arbitrated.  The final and seventh cause of action for fraud in the inducement of the TKC Settlement Agreement alleges only that the agreement was "negotiated at arms length through outside counsel" but that Troxel never had any intent to comply with the terms of

---

[6] Such an allegation demonstrates the lengths to which Plaintiff is intent on going to impugn Troxel, as all are aware that TKC LLP has generated no new business since well before the Agreements.

the TKC Settlement Agreement.  Again, no mention of the mandatory arbitration provisions in

the Agreement was mentioned a single time in the Complaint.

Upon retention and receipt of the Complaint in this action, counsel for Defendants had

various communications with counsel for Plaintiff.  On several occasions counsel for Defendants

tried in good faith to resolve this matter and move this matter to arbitration.  By way of example

only, on September 23, 2020, counsel for Defendants wrote Plaintiff's counsel:

> Mr. Troxel has authorized us to accept service of any arbitration demand
> made pursuant to the November 1, 2019 agreements. Your withdrawal
> would not prejudice your client and would allow the parties time to
> discuss a potential resolution. Please, however, be further advised, and
> accept this correspondence as additional due notice, that should you not
> withdraw this pending action in favor of arbitration, we will seek
> sanctions in our motion to compel arbitration.

(See correspondence attached to Leonard Declaration as Exhibit "4"). Thereafter, on October 9,

2020, counsel for Defendants again attempted to resolve the arbitration issue and the need for the

instant motion in writing:

> Further to prior discussions and prior good faith notices, please
> accept this email correspondence as a final good faith attempt to
> resolve the above referenced matter absent motion practice -
> commencing initially with a Motion to Compel Arbitration based
> on the acknowledged arbitration clauses in the various pre-existing
> agreements between, *inter alia*, our respective clients.
> As indicated previously, should we be forced to move forward
> with motion practice, we will seek all available remedies, including,
> but not limited to, the imposition of sanctions.

(See correspondence attached to Leonard Declaration as Exhibit "5"). Thereafter, on November

16, 2020, counsel for Defendants reiterated a verbal offer to stipulate to preserve all relevant

records:

> We do reiterate our proffer to enter into a stipulation preserving
> existing potentially relevant documents and also reiterate our position
> that any opposition to our motion to compel would be without merit

8

and that there is no relevant case law that you have provided that would suggest - on the current pleadings - that arbitration is not the proper forum for any disputes between Plaintiff and Mr. Troxel.

Based on the following, there is no legal basis to deny the instant motion, dismiss the Complaint, and direct the Parties to arbitration.

<u>Argument</u>

<u>Point I</u>

<u>THE CLAIMS RAISED IN THE COMPLAINT ARE SUBJECT TO MANDATORY ARBITRATION CLAUSES</u>

A.   <u>General Standard</u>:

It is virtual black letter law in the United States that Courts are to "rigorously enforce arbitration agreements according to their terms, including terms that specify with whom [the parties] choose to arbitrate their disputes, and the rules under which that arbitration will be conducted." *American Express Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013); *Sutherland v. Ernst & Young, LLP*, 726 F.3d 290 (2nd Cir. 2013).  It is equally well-settled and undeniable  that, under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., parties can contract to arbitrate, rather than litigate, their disputes and that any such agreements are "valid, irrevocable, and enforceable" FAA § 2.  The U.S. Supreme Court has stated that "Congress declared a national policy favoring arbitration" by enacting the FAA. Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984), and this Circuit has asserted that "[t]he FAA 'embodies a national policy favoring arbitration' founded upon 'a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, [their] disputes.'" *Doctor's Associates, Inc. v. Alemayehu*, 934 F.3d 245, 250 (2nd Cir. 2019) (*quoting Schnabel v. Trilegiant Corp*., 697 F.3d 110, 118 (2nd Cir. 2012).

9

In practice, any doubts concerning the scope of arbitration are to be resolved "in favor of arbitrability," and Courts should "compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *State of New York v. Oneida Indian Nation of New York*, 90 F.3d 58, 61 (2nd Cir. 1996); see also, *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S.574, 582-3 (1960); *Wolf v. Westwood Mgmt. LLC*, 503 F.Supp.2d 274 (DDC August 27, 2007); *Dowley v. Dewey Ballantine, LLP*, 2006 U.S. Dist. LEXIS 23304, 2006 WL 1102768, *8 (D.D.C. Apr. 26, 2006); *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216 (SDNY 2020).

Moreover, it is clear that when all issues are arbitrable, dismissal is appropriate:

> ...the majority of Circuit courts to consider this issue have concluded that Section 3 of the FAA does not preclude dismissal of a lawsuit when all of the claims asserted will be submitted to the arbitrator. See, e.g., Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 372 (1st Cir. 2011) (HN34 "Where one side is entitled to arbitration of a claim brought in court, in this circuit a district court can, in its discretion, choose to dismiss the law suit, if all claims asserted in the case are found arbitrable.") (quotations and citations omitted); Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707 (4th Cir. 2001) (sanctioning dismissal "when all of the issues presented . . . are arbitrable"); Aviles v. Russell Stover Candies, Inc., 559 F. App'x 413 (5th Cir. 2014) (affirming dismissal rather than stay under Fifth Circuit precedent); Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) (stating that dismissal, as opposed to a stay pending arbitration, is proper "when all of the issues raised in the district [**34] court must be submitted to arbitration"); Ozormoor v. T—Mobile USA, Inc., 354 Fed. App'x. 972, 975 (6th Cir. 2009) ("[Plaintiff] challenges the dismissal of his suit, asserting that 9 U.S.C. § 3 requires district courts to stay suits pending arbitration rather than dismiss them. We have already rejected that argument.")...

> Moreover, while the D.C. Circuit has not explicitly opined on this issue, it has upheld a finding that Section 3 of the FAA does not preclude dismissal of an action "in the proper circumstances," including where "all issues raised in the complaint must be submitted to arbitration." Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc., CIV.A. 05-151(GK), 2006 U.S. Dist. LEXIS 44002, 2006 WL 1793295, at * 3 (D.D.C. June 28, 2006) aff'd, 531 F.3d 863, 382 U.S. App. D.C. 134 (D.C. Cir. 2008) (internal quotations omitted); see also Cole v. Burns Int'l Sec. Serv.., 1996 U.S. Dist. LEXIS 22541, at *11-12 (D.D.C. Jan. 31,

10

1996), aff'd, 105 F.3d 1465, 323 U.S. App. D.C. 133 (D.C. Cir. 1997).

This Court will follow the majority rule regarding the propriety of dismissing a case where all of the claims are subject to resolution by the arbitrator.

*W&T Travel Servs., LLC v. Priority One Servs.*, 69 F. Supp. 3d 158 (DDC 2014)

B.  The Breadth of the Specific Clauses:

The two arbitration provisions read as follows:

**Arbitration**: Any dispute arising out of or related to this agreement shall be subject to binding arbitration with JAMS Washington, D.C., Office, at a location mutually agreeable to the Parties and the Arbitrator.

(from the TKC Settlement Agreement); and

Each party hereto irrevocably waives its right to a jury trial and unconditionally consents to submit to the exclusive jurisdiction of binding arbitration, to be administered by JAMS Washington, D.C. office, at a location mutually agreeable and convenient for the Parties and the arbitrator, for any action, dispute, suit or proceeding arising out of or relating to this Mutual Release.

(from the Release Agreement).

Both arbitration provisions are broad and encompass not only disputes concerning the Agreements but also those disputes that in any way relate to the Agreements. The Release Agreement goes further to acknowledge the "exclusive jurisdiction of binding arbitration." Moreover, as Plaintiff himself has acknowledged, the terms of the TKC Settlement Agreement were "negotiated at arms-length through outside counsel." (Compl. ¶88). Under these circumstances, there is simply no basis to disregard the Parties' clear and unequivocal intent to arbitrate any and all disputes arising out of their interactions prior to the October 31, 2019 as well as any disputes relating to the Agreements that they executed thereafter. *See e.g., Wolf*, 503 F.Supp.2d at 282 (Broad arbitration clauses encompass any disputes even touching the contract or agreement); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624

n.13 (1985);  *Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union, Local One*, 903 F.2d 924, 927 (2nd Cir. 1990).

C.      <u>The Cause of Action For Fraudulent Inducement Does Not Warrant A Variant Result</u>.

Dispositively, a claim for fraudulent inducement of a contract attacks the validity, not the existence of a contract, and such claims must be arbitrated.   See *e.g., Prima Paint Corp., v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-4 (1967) (Holding that the statutory language of the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally").   Unless "the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006); *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58 (2nd Cir. 2012); *Delgado v. Ocwen Loan Servicing, LLC*, 2016 U.S.Dist Lexis 119069; 2016 WL 4617159 (EDNY 2016).   In the instant case, the arbitration clause is not even mentioned in the Complaint, so there is no basis to even contend that the fraudulent inducement claim – even if it had any merit, which it does not[7] – could form any basis to deny the instant motion for dismissal and to compel arbitration.

---

[7]  See *e.g., Wall v. CSX Transp., Inc.,* 471 F.3d 410, 416 (2d Cir. 2006) (General allegations that "defendant entered into a contract while lacking the intent to perform it are insufficient" to state a claim for fraudulent inducement) (*quoting New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 318 (1995)); *AXA Versicherung AG v. N.H. Ins. Co.*, 348 F. App'x 628, 630 (2d Cir. 2009); *Space, Inc. v. Simonwitz*, No. 08-cv-2854, 2008 U.S. Dist. LEXIS 51782, at *17 (S.D.N.Y. July 8, 2008) (Allegations that defendant misrepresented future intent to perform under contract "is patently insufficient to support a claim for fraud under New York law"); *Butler v. Enter. Integration Corp.*, 459 F. Supp. 3d 78 (DDC 2020);  *Va. Acad. of Clinical Psychologists v. Group Hospitalization & Med. Servs*., 878 A.2d 1226 (DDC 2005) ("The mere breach of a promise is never enough in itself to establish the fraudulent intent.")

D.      Defendant Rublee Is Also Covered Under The Arbitration Provisions.

Although not a signatory to the Agreements, Rublee is protected by the same.  As an initial matter, the TKC Settlement Agreement contains an obligation on the part of, *inter alia*, Plaintiff to enter into and "exchange general and mutual releases relating to any claims that could have been brought by and amongst the Parties for any actions prior to the date of this Agreement," which releases extended "to the employees or contractors associated with any of the WBI Firms, TKC Firms, and Troxel Law LLC and Troxel Law LLP."  The Complaint alleges that Rublee was alternatively "an independent marketing expert" for TKC LLP (Compl. ¶15) or "a marketing officer for Troxel LLC." (Compl. ¶22).  In each instance, Rublee is clearly an employee or contractor associated with either one of the enumerated business entities covered by the general release referenced in the TKC Settlement Agreement and incorporated in the Release Agreement.  As both Agreements have arbitration clauses concerning their enforcement and Rublee is clearly covered under the release language in each agreement, he is entitled to arbitrate the claims against him, no matter how frivolous they are.  *See e.g., Wolf*, 503 F.Supp.2d at 282. This right stems not only from his status as a third-party beneficiary of the Agreements (see *e.g., Oehme, van Sweden & Associates, Inc. v. Maypaul Trading & Servs., LTD.,* 902 F. Supp. 2d 87 (DDC 2012); *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)), but also as he "is seeking to resolve issues that are intertwined with an agreement that the signatory has signed" and, as such, has the right to enforce the arbitration provisions.  *Riley v. BMO Harris Bank, N.A.*, 61 F. Supp. 3d 92 (DDC 2014) (*quoting*, *Fox v. Computer World Servs. Corp.*, 920 F.Supp.2d 90, 103 (D.D.C. 2013)); see also *Ragone v. Atl. Video at Manhattan Ctr*., 595 F.3d 115, 126-27 (2nd Cir. 2010); *Ross v. AM. Express Co.*, 547 F.3d 137, 144 (2nd Cir. 2008).

Point II

Sanctions Are Warranted

The Plaintiff relies on the very agreement, the TKC Settlement Agreement, that contains

an explicit, broad arbitration clause and cites to numerous sections of that same agreement, but

blatantly has ignored the clear arbitration clause therein.  Plaintiff has also ignored the clear

arbitration clause in the related Release Agreement.  Not only did Plaintiff file the instant action

in direct contravention of the clear and controlling arbitration provisions in the Agreement, but it

refused to withdraw the instant action when such clauses were identified by Defendants on no

fewer than three (3) times in writing.  There is simply no basis to oppose arbitration in this

matter, and sanctions are warranted.  Plaintiff himself is an attorney, and he is represented by

learned and experienced counsel who were intimately familiar with the Agreements. *Zimmerman*

*v. UBS AG*, 2018 U.S. Dist. LEXIS 144133 (SDNY 2018) (Court recognized potential merit of

sanctions for filing a lawsuit despite the clear arbitration provisions in the two applicable

agreements, but forbearing primarily because the plaintiff was *pro se*).

14

<u>Conclusion</u>

WHEREFORE it is respectfully submitted that, for all of the foregoing reasons, the Court should dismiss the Complaint; direct the Parties to arbitration forthwith pursuant to the explicit terms of the Agreements; impose sanctions on Plaintiff for the cost and fees incurred by Defendants in making this motion to dismiss and compel arbitration; and grant to Defendant any such other and further relief as is just and proper.

Dated:  New York, New York
    November 20, 2020

            _____
            The Law Offices of Neal Brickman, P.C.
            Neal Brickman (NB0874)
            Ethan Leonard (EL2497)
            420 Lexington Avenue - Suite 2440
            New York, New York 10170
            (212) 986-6840
            Neal@brickmanlaw.com
            Attorneys for Defendant