

November 27, 2020

**Via ELECTRONIC FILING**
The Honorable Jesse M. Furman
Thurgood Marshall United States Courthouse
40 Foley Square, New York, NY 10007

      Re:    *Piacentile v. Troxel*, Civil Action No.: 1:20-cv-05252-JMF,
              **LETTER-MOTION FOR A PRE-MOTION DISCOVERY CONFERENCE**

Dear Judge Furman:

      Plaintiff submits this Letter-Motion pursuant to Your Honor's Rule 2(c) and SDNY Local Civil Rule 37.2, and requests an informal conference with the Court. Despite several calls and e-mail exchanges with the defense regarding this matter, all efforts at emergency discovery have been stymied. The Court's intervention is required for discovery in aid of arbitration or to preserve the status quo while the Court decides the proper forum.

      This matter involves a law firm – Troxel Krauss & Chapman LLP ("TKC LLP") – in which Dr. Joseph Piacentile, M.D., J.D., was a non-attorney partner as allowed by D.C. ethics rules.[1] First Am. Compl. ("FAC") at ¶ 10. Dr. Piacentile funded the creation of TKC LLP while making his daughter's boyfriend – Defendant Troxel – a named partner, on the understanding that Dr. Piacentile would receive 1/3 of the new firm's profits. FAC, ¶ 16. Troxel was a recent law school graduate previously terminated as an associate by two law firms. FAC, ¶ 4. Dr. Piacentile would provide Troxel and co-defendant marketing guru Jonathan Rublee with an initial $500,000 investment which Troxel and Rublee would use to develop an online marketing plan in the mass tort/mass arbitration arena. FAC, ¶ 14. Dr. Piacentile introduced Troxel to Brian Krauss – Dr. Piacentile's partner in another D.C. law firm – and Krauss joined TKC LLP. FAC, ¶ 12. Dr. Piacentile further obtained the investment of a partner at a major law firm, who contributed hundreds of thousands of dollars to the new endeavor. FAC, ¶ 15. Dr. Piacentile put his reputation and money at risk to give his daughter's boyfriend the chance at a legal career.

      Marketing efforts started and clients retained TKC LLP. FAC, ¶ 18. While a Puerto Rican entity, Troxel Krauss & Chapman, LLC ("TKC LLC"), was created, Dr. Piacentile's understanding was that this separate entity was to be an affiliated entity of TKC LLP which would control it– with the funds from TKC LLP passing through TKC LLC so that Krauss and

---

[1] Having run afoul of Medicare regulations in the past, Dr. Piacentile has since dedicated his life to ferreting out fraud for the Government, assisting in investigations which led to the recovery of billions of dollars. Dr. Piacentile recently graduated from law school and took the New York bar exam. His results are pending.

100 Connell Drive, Suite 2200, Berkeley Heights, New Jersey 07922
P 973.218.1111 / F 973.218.1106 / www.stonemagnalaw.com

Troxel could obtain certain tax advantages.[2]  Declaration of Joseph Piacentile ("Piacentile Dec."), ¶ 3.  Dr. Piacentile was not told that TKC LLC was a separate law firm and retaining clients apart from TKC LLP.  Piacentile Dec., ¶ 5.   Throughout late 2018 and early 2019, Dr. Piacentile's attorneys circulated agreements to formalize the arrangement and Krauss and Piacentile executed them.  FAC, ¶ 17.  Troxel refused to sign any documents but did not indicate that he disagreed with their contents.  *Id.*

In early 2019, Troxel moved to California.  FAC, ¶ 19.  Unbeknownst to Dr. Piacentile and Krauss, while remaining the lead partner of TKC LLP, Troxel was using Dr. Piacentile's and TKC LLP's funds to pay Rublee to find clients for his <u>other</u> firms.  FAC, ¶ 20.  Troxel had established a separate law firm (Troxel LLP, formed April 5, 2019, in New York) and a second Puerto Rico based entity (Troxel LLC, formed July 8, 2019) <u>owned solely by him</u>.  *Id.*  Troxel did not disclose that he was soliciting clients – through Rublee – on behalf of that new law firm.  FAC, ¶ 22.  This was confirmed by Dr. Piacentile when he located Rublee's LinkedIn page, in which Rublee described himself as a case intake manager for the Troxel law firm.  After seeing that Dr. Piacentile had visited his site, Rublee deleted this work entry.  FAC, ¶ 22.

In March 2019, it became clear that the TKC partnership needed to end.  FAC, ¶ 29.  Dr. Piacentile made trips to California to reach a resolution with Troxel, but to no avail.  FAC, ¶ 30.  Troxel disavowed that Dr. Piacentile ever owned a 1/3 interest in TKC LLP, and claimed that Dr. Piacentile owned no share of the partnership despite his $500,000 personal investment.  FAC, ¶ 32.  Meanwhile, Troxel had abandoned the firm that bore his name in favor of his new firm Troxel LLP.  TKC LLP's clients were cast off, and the firm's marketing techniques and funds were being used to promote Troxel's new firm.  FAC, ¶ 22.  Dr. Piacentile and Krauss obtained counsel to assist them with reaching a settlement with Troxel for the wind down of TKC LLP.  After months of negotiations, the parties entered into an agreement (the "TKC Settlement Agreement") executed October 31, 2019, and which provided for the division of the partnerships' revenues, the return of Dr. Piacentile's $500,000 investment through preferential distributions, and the provision of TKC LLP's case/client list so that Dr. Piacentile could monitor his interest in pending TKC LLP cases.  FAC, ¶ 36.  The TKC Settlement Agreement also recognized Dr. Piacentile's 30% interest in TKC LLP's profits.  FAC, ¶ 38. There was never an understanding that TKC <u>LLC</u> was competing with TKC LLP and had a separate book of business that Dr. Piacentile was not entitled to share.  Piacentile Dec., ¶ 6.  The agreement gave Troxel 30 days to provide the TKC case list.  FAC, ¶ 36, 44.

Troxel disregarded the TKC Settlement Agreement's terms.  Although Troxel had agreed to provide the TKC client list and retainer agreements, one year later that has not happened.  FAC, ¶ 44.  Dr. Piacentile is locked out from the firm's most important books and records.  He has no way of monitoring TKC LLP's cases to ensure that Troxel is following the parties' agreement.  Moreover, although Troxel was required to remove his name from TKC LLP and its

---

[2] Dr. Piacentile was not a member of TKC LLC, but the parties understanding was that he would benefit from revenues of TKC LLC through his ownership interest in TKC LLP.  The documents that Krauss signed reflect that understanding.  Piacentile Dec., ¶ 4.



website, he has failed to do so. As a result, TKC clients who apparently do not even know what law firm and what lawyers represent them are attempting to locate Troxel to learn information about their cases. Piacentile Dec., ¶ 9. Even though the agreement provided Troxel would remove his name from the firm, he demanded to be and was designated wind-up partner. FAC, ¶ 42. Expedited discovery is necessary to obtain the information to assist firm clients.

Two startling revelations that have come a year later are (1) Troxel is claiming that the Keller Lenkner firm, who is referred to in the agreement as TKC LLP's co-counsel, never had a case with TKC LLP, and (2) having failed to comply with the requirement that he provide the names of TKC LLP clients, after this lawsuit was filed Troxel for the first time took the position that some unknown number of those clients were actually clients of TKC LLC and Dr. Piacentile has no interest in them. Piacentile Dec., ¶ 7. Thus, Troxel used Dr. Piacentile's investment to fund the operations of what Troxel now calls a separate law firm and which he insists that Dr. Piacentile is entitled to <u>no share of</u>. This is no minor issue, as Keller Lenkner is currently involved in massive litigation with Uber and Lyft, among others, seeking hundreds of millions of dollars in class litigations and mass arbitrations. Piacentile Dec., ¶ 8.[3]

Courts allow discovery and interim relief both in aid of arbitration and to preserve the status quo. In *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith*, 910 F.2d 1049, 1053 (2d Cir. 1990), the Second Circuit explained that arbitration could become a "'hollow formality' if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute." *See also Baldwin Tech. Co. v. Printers' Serv., Inc.*, No. 15 Civ. 07152 (GBD), 2016 BL 22555, at * 3, n. 4 (S.D.N.Y. Jan. 27, 2016).

Plaintiff seeks emergency discovery to protect his rights and firm clients while this matter progresses: (1) The complete list of TKC LLP cases as required by Section 7 of the agreement; (2) The complete list of TKC LLC cases as of the date of the execution of the agreement; (3) A recitation of any material developments in TKC LLP cases since the agreement's execution, as required by Section 11; (4) An accounting of any distributions that have occurred in TKC LLP or TKC LLC cases; (5) A copy of any tax return filed on behalf of TKC LLP; (6) A list of all TKC LLP and TKC LLC co-counsel as required by Section 7 of the settlement; (7) Copies of the retainer agreements for every TKC LLP client as required by Section 7 of the settlement; and (8) Permission to subpoena the Keller Lenkner firm to determine all Troxel cases being handled by Keller and the dates and circumstances under which those cases came to the firm.[4]

Respectfully submitted,
*s/David S. Stone*
David S. Stone

---

[3] Perhaps the most compelling argument that Troxel's interpretation of the agreement is without merit is that his own partner, Krauss, agrees with Dr. Piacentile's interpretation. If necessary, Plaintiff is prepared to submit an affidavit from Krauss to this effect.

[4] Rublee – who is alleged to be Troxel's co-conspirator – is not a party to the TKC Settlement Agreement and thus this discovery would take place anyway during the normal course of the lawsuit against Rublee.